15526

STATE v. WAGSTAFF

(25 S. E. (2d), 484)

*Mr. A. L. King,* of Georgetown, S. C., Counsel for Appellant,

*Mr. J. Reuben Long,* Solicitor, of Conway, S. C., for the State, Respondent,

April 12, 1943.

MR. ASSOCIATE JUSTICE BAKER delivered the unanimous opinion of the Court:

At the Spring term, 1941, of the Court of General Sessions for Georgetown County the appellant above named was convicted upon an indictment brought under Code Section 1111, for the carnal knowledge of a woman child under the

age of 16 years. The indictment also charged three other young men as codefendants with being present at the time and place in question and aiding and abetting the appellant in the commission of the crime. A verdict of not guilty as to two of these codefendants was directed by the Court, and the jury found the other codefendant not guilty. The appellant, however, was found guilty with recommendation to the mercy of the Court, whereupon he was sentenced to imprisonment for the term of five years; and the case comes to this Court upon his appeal. All persons involved were of the white race.

The State offered testimony tending to show that on the 14th day of November, 1940, the appellant and his codefendants took with them upon a boat down the river at the City of Georgetown, a young woman whose name is given in the indictment, but who will hereinafter be referred to simply as the young woman. It appears from the State's evidence that the boat was stopped at two places at which the appellant and the young woman went ashore together; and that finally the group arrived at an old abandoned boat with upper and lower compartments where they all remained until some time late in the night; and that the young woman left the defendants and returned to her home about midnight. Shortly thereafter she became very sick and was suffering from nausea, when she was taken to the Conway Hospital where she died in a very few minutes after her arrival.

The physician who examined her at the Conway Hospital testified for the State, and we quote the following from his testimony:

"The hymen was ruptured, the vagina was dilated. That is as far as I went with the examination.

"Q. By that, do you mean that some instrument had penetrated that? A. The vagina—yes."

One of the deputy sheriffs of Georgetown County testified at length with reference to his investigation of the case and as to statements made to him by the defendants; and

among other things he testified that the appellant stated to him "that while he was aboard of the boat at the foot of Meeting Street, on the water front, that he did have a sexual intercourse with" the young woman; and that appellant further stated that he asked his three codefendants "to go topside, that was when he had the sexual intercourse with her and that when he got to the corner of Prince and King Street that he went on out in the back of" the house of one of his codefendants "in an open lot there and stayed with" the young woman. There was no dispute in the evidence that the group, consisting of the five persons above referred to, did take the boat trip, but the appellant in his testimony in his own behalf unequivocally denied all the charges made against him.

The father of the young woman testified that on November 14, 1940, the day of the alleged occurrence, his daughter was a little over 13 years of age, that is to say, that she was then under the age of 14 years. And her mother testified that, as shown by the family Bible which was introduced in evidence, she was born on June 9, 1927, which would indicate that on November 14, 1940, she was 13 years, 5 months and 5 days old. On the other hand, the adoptive mother of the appellant testified that the young woman was well developed and looked to be about 16 years of age.

At the close of all the testimony (only a part of which is narrated above) the appellant made a motion for a new trial; but the motion was overruled by the presiding Judge, to wit, Honorable Homer S. Blackwell, Special Judge. The exceptions charge the Court with error in overruling this motion and also in numerous other particulars.

The young woman's death ensuing so soon after having been in the company of the defendants, it appears that a warrant was first taken out against them for murder, but evidently was afterwards withdrawn, because the indictment against them was found under Section 1111 above referred

to, the crime charged being commonly known as statutory rape; and there was no evidence tending to prove any other charge against the defendants or any of them. However, it was practically impossible to prevent some reference being made in the course of the proceedings to the fact of the young woman's death.. The cause of her death is not shown by the record, but it is stated in the brief of appellant's counsel that it was probably due to some poisonous substance which she took.

One of the exceptions charges the Court with error because in the examination of the jurors on their *voir dire* the presiding Judge referred to the young woman as "the deceased," giving her name. But obviously this was not error because the Court's reference to her decease was merely for the purpose of identification. And aside from this, counsel for the appellant made no objection whatever at the time.

There are other exceptions which also charge the Court with error on the subject now under consideration. The sheriff in his testimony relating to his investigation of the case, stated, without having been asked the question, that on the night of the death of the young woman a warrant was handed to him charging the four young men with murder; whereupon counsel for the appellant moved that the answer be stricken out, but the Court ruled that it was merely a preliminary statement; and we are of opinion that the ruling was correct. *State v. Floyd,* 174 S. C., 288, 177 S. E., 375. But during the further course of the sheriff's examination he testified that the morning after her death he took the defendants to a funeral home where the body of the young woman was, and said to them: "Boys, there is what you have done." When this statement was made counsel for appellant immediately and properly objected, and the Court promptly sustained his objection, whereupon the Solicitor said to the witness, "Sheriff, just skip over what happened there."

Counsel for the appellant, however, complains that the trial Judge should have gone further and that he should have instructed the jury not to consider but to disregard this testimony. There was no request, express or implied, on the part of counsel that the Court should instruct the jury to this effect, and we see no obligation which rested upon him to do so in view of the fact that he had immediately sustained counsel's objection to the testimony, and the jury will be presumed to have understood that it was out of the case.

In this connection, it will be observed that one of the grounds of the motion for a new trial was that the solicitor in his closing remarks to the jury referred to the appellant as if he were being tried on the charge of murder. But the Transcript of Record shows that no objection was made by counsel at that time, and that the point was first made upon the motion for a new trial. The question is, therefore not properly before this Court, in view of the rule laid down in the case of *State v. Meehan,* 160 S. C., 111, 158 S. E., 151, requiring among other things a showing that timely objection was interposed. See, also, *State v. Mishoe,* 198 S. C., 215, 17 S. E. (2d), 142, and the cases therein cited.

Some of the officers testified in regard to statements made by appellant's codefendants, and while the exceptions in this respect admit that the Court definitely ruled that any such statements could not be considered against the appellant, the charge of error is made that the Court did not so instruct the jury, evidently meaning that he did not so instruct them in the course of his general charge. But the record repeatedly shows that the presiding Judge stated clearly, in the presence of the jury, that any statement alleged to have been made by a codefendant was competent only as to himself unless made in the presence of the other defendants. There were several rulings of the Court to this effect, and they were so plainly expressed

that the jury could not have misunderstood them. Among other rulings of this character we quote the following: "I said I instructed the jury that any statement that defendant made with reference to the other defendants and not in their presence would not be competent testimony as to the other defendants."

We find no error here. *State v. Holmes,* 171 S. C., 8, 171 S. E., 440.

■ There were some questions asked by the solicitor with reference to a certain sweater alleged to have been owned by the appellant but to have been worn by the young woman upon the occasion in question; but the Court held that the witness was not competent to say what the nature of a stain thereon was, and furthermore, that there was not sufficient testimony to show that the proffered garment "was worn or in the possession of any of the defendants on that afternoon," and hence it was excluded and was never introduced in evidence. In the light of the Court's ruling the claim of error in this regard does not appear to be well founded.

■■ The appellant also charges that the presiding Judge committed error in allowing the father of the young woman to testify as to her age without a showing that the record of her birth could not be produced, such record being the best evidence. But it is well settled that parents or other persons may testify upon the question of age if they are able to do so upon the basis of actual knowledge. The vital statistics statute, Section 5134, Codes 1932 and 1942, provides that a certified copy of the statutory record of a birth shall be *prima facie* evidence, but does not provide that the same is the best evidence. And we think the rule applicable here is correctly stated in 22 C. J. S., Criminal Law, §·694, page 1184, as follows:

"In the absence of a contrary statutory provision, a certificate of birth or other *official record* is not necessarily required to prove a person's age, the best evidence of such

fact being the testimony of a person having actual knowledge thereof." (Italics added.)

There are certain other exceptions imputing error to the trial Court in allowing leading questions to be asked and in permitting the father of the young woman to testify as to her physical condition upon her return to her home on the day in question; but we find no error in the Court's ruling, especially in view of the fact that these are matters resting in the discretion of the trial Judge, which does not seem to have been abused.

Complaint is also made by the appellant as to his cross examination by the solicitor, and the exceptions appear to charge that the solicitor cross examined the appellant to his prejudice in regard to collateral matters. However, we have reviewed the cross examination with care and we find no error therein. Much of it was evidently intended to test the credibility of the witness; and we may say in this connection that it is in nowise subject to such exceptions as were made to the defendant's cross examination in the recent case of *State v. Bealin* (Belin), 201 S. C., 490, 23 S. E. (2d), 746, filed January 4, 1943, and which were sustained by the majority opinion of this Court. The appellant in his motion for a new trial also alleges that the State attacked his reputation without its being put in issue, but we do not so construe the record.

The Transcript of Record shows that at the conclusion of the cross examination of the mother of the young woman the following occurred:

"Q. You hadn't seen her since that morning and when you went home it was four o'clock? A. No, when I saw her she was in a dying condition.

"Q. She was missing at four o'clock? A. She was missing all day. She didn't come home after school.

"Q. I mean so far as you are concerned, what knowledge you had of her being missing— A. When I saw her again

she was in a dying condition, that night, and I had looked for her all that day.

"Q. So that is all the statement you want to make in reply to my question, is that when you saw her she was in a dying condition? A. That's right.

"Q. And you will not state in response to questions at what time you got knowledge that your daughter was missing from home? Come down.

"Note: At this point witness attempted to get to young Wagstaff screaming 'I could tear your eyes out.'

"State Rests

"Mr. King: Your Honor, we will ask the Court to instruct the jury that anything that happened outside of the witness box has nothing to do with this case."

As shown by the foregoing no motion was made by counsel for appellant, save that the Court was requested to instruct the jury as above indicated. It appears, however, that the instruction was not then given, and it occurs to us that this may have been due to the fact that immediately thereafter a motion was made for a directed verdict, which was granted as to two of the defendants. At all events, upon the following day just after the close of all the testimony the Court instructed the jury as follows:

"Gentlemen of the jury, I overlooked one matter yesterday. Mr. King, counsel for the defendants, asked me to call to your attention the occurrence when the mother of the deceased left the stand. I should have instructed you then. I now instruct you to disregard anything that occurred after the witness left the stand. I don't know whether you noticed it or not but counsel asked me to call it to your attention yesterday, which I should have done, and I now call it to your attention."

But the appellant excepts because the Court failed "to promptly instruct the jury upon the request of counsel," and also because of his refusal of the motion for a new trial,

upon the ground that he had been gravely prejudiced before the jury by the incident in question. And while we find nothing whatever in the exceptions charging the trial Judge with error in failing to order a mistrial when the incident occurred, the brief of counsel for appellant argues this point and lays much stress upon it, citing in support of his view that a trial Judge should declare a mistrial *on his own motion,* where incidents have occurred necessarily tending to deprive the accused of a fair and impartial trial, the case of *State v. Cason,* 41 S. C., 531, 19 S. E., 918, and he inadvertently states that the question was there first raised on appeal, but the opinion in that case definitely shows that the matter was passed upon in the course of the trial by the presiding Judge who held in substance that he was bound to proceed with the trial, while this Court ruled that he should have discharged the jury and thus have ordered a mistrial.

We may indeed conceive of cases where the trial Judge would have the right, and it might be his duty, to order a mistrial, even in the absence of a motion by the defendant, but such cases would be rather rare, except of course where a jury fails to agree, because unless a mistrial is held to have been properly ordered the result is acquittal by reason of former jeopardy. Indeed, it was held in the case of *State v. Richardson,* 47 S. C., 166, 25 S. E., 220, 35 L. R. A., 238, that even where a defendant simply stands mute and a mistrial is improperly ordered he must be discharged upon the plea of former jeopardy.

We may assume that counsel for the appellant in the case at bar refrained from making a motion for a mistrial because he deemed the incident insufficient to warrant such a motion, and if so, we think his judgment was sound. We believe the jury could readily understand that the witness in question might have a hostile attitude toward the accused, because of the natural effect of the circumstances upon her emotions, although there was nothing whatever in

her own testimony tending to show his guilt, and hence her attitude was based solely upon the testimony of others. And it will scarcely be contended that a defendant may stand quietly by and take the chances of a favorable verdict and thereafter complain that a mistrial should have been ordered.

The rule relating to the matter of ordering a mistrial was very admirably stated in the case of *State v. Bilton,* 156 S. C., 324, 153 S. E., 269, in which the opinion was delivered by Chief Justice Blease; and his language, as follows, was quoted with approval in the later case of *State v. Rector,* 166 S. C., 335, 164 S. E., 865, 867: "The decisions of the courts of other jurisdictions, and some from the appellate courts of this state, cited in support of it, have resulted in the statement that the proper general rule is this: 'The American cases hold generally that there must be a *manifest necessity* for the discharge of the jury *and leave the courts to determine in their discretion whether under all the circumstances of each case such necessity exists.* When such necessity exists, a plea of former jeopardy will not prevail on a subsequent trial. *But if the jury are discharged without defendant's consent for a reason legally insufficient and without an absolute necessity for it,* the discharge is equivalent to an acquittal, and may be pleaded as a bar to a subsequent indictment.' " (Italics added.)

When all the circumstances of the instant case are considered we believe it is clear that even if a motion for a mistrial had been made the trial Judge would not have been justified in granting it, in the proper exercise of his discretion. There was certainly no manifest or absolute necessity for such action. We are likewise of opinion that his discretion was soundly exercised in refusing the motion for a new trial on this ground.

The mere fact that the presiding Judge did not instruct the jury in regard to this matter immediately after counsel for appellant's request does not seem to us to have been

prejudicial to the appellant. The instruction was later given, plainly and specifically, and in the light of the trial Judge's explanation we think it was just as effective as if it had been made right after the occurrence.

In view of the verdict rendered in this case we do not think the rule laid down by this Court in capital cases is applicable, to wit, that the Court *in favorem vitae* will assume the duty to search the record for prejudicial error, and that it will take notice of any error apparent on the record affecting substantial rights of the accused, even though not made a ground of the appeal, as will appear by reference to the case of *State v. Osborne*, 200 S. C., 504, 21 S. E. (2d), 178, and the basic cases therein cited. But notwithstanding this, we have endeavored to review with painstaking care the entire record in the case at bar, and the result of such review is that we are unable to find anything which may be reasonably considered error in the conduct of the case by the Court below.

The appellant was represented by experienced counsel, and the trial Judge was ever mindful of his rights, and explained the law to the jury clearly and correctly. It seems to us that he had a fair and impartial trial, and certainly the evidence was quite sufficient to warrant the verdict found against him if the jury believed it; and the punishment imposed upon him, pursuant to the jury's recommendation to mercy, was in accordance with the statute.

All the exceptions are overruled, and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Bonham, Messrs. Associate Justices Fishburne and Stukes, and Circuit Judge Wm. H. Grimball, Acting Associate Justice, concur.