John A. TAYLOR, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 125, 1996.

Supreme Court of Delaware.

Submitted: Feb. 19, 1997.
Decided: March 14, 1997.

Before, WALSH, HOLLAND and
HARTNETT, JJ.

Raymond M. Radulski, Assistant Public
Defender, of Wilmington, for defendant be-
low, appellant.

Timothy J. Donovan, Jr., Deputy Attorney
General, of Wilmington, plaintiff below, for
appellee.

HOLLAND, Justice:

Following a jury trial in the Superior
Court, the defendant-appellant, John A. Tay-
lor ("Taylor"), was convicted of two counts of
Unlawful Sexual Intercourse in the First De-
gree, five counts of Unlawful Sexual Contact
in the Second Degree, and one count of
Offensive Touching. Taylor was sentenced
consecutively as follows: fifteen years man-
datory-minimum incarceration for each of the
two Unlawful Sexual Intercourse in the First
Degree charges; six months incarceration
for each of three Unlawful Sexual Contact in
the Second Degree charges; six months in-
carceration followed by Level III probation

for one Unlawful Sexual Contact in the Second Degree charge; three months incarceration followed by probation for one count of Unlawful Sexual Contact in the Second Degree charge; and a $100 fine for the Offensive Touching charge.

Taylor has raised one issue in this direct appeal. Taylor contends that the Superior Court abused its discretion in denying his motion for a mistrial after an outburst by a witness for the State. This Court has concluded that Taylor's contention is not supported by the record.

### Substantive Facts

Taylor was convicted of sexually molesting three children: Scott Webb (age 13), Patrick Reed (age 10), and Raymond Smith (age 6).[1] Patrick and Raymond are brothers. Their mother, Mary Smith, is Scott Webb's older sister. Ethel Webb is mother to Mary and Scott, as well as the grandmother of Patrick and Raymond. The offenses took place in the home of Ethel Webb's brother, David Gray, and his wife, during the spring and summer of 1994.

Ethel Webb had met Taylor in 1993, when all of the above-named individuals (except the Grays) were living in Little Rock, Arkansas. The two of them developed a plan to open a restaurant in Delaware with David Gray. Ethel Webb, Scott Webb, Raymond Smith, Ethel's husband, another grandchild, and Taylor arrived in Delaware in late March or early April 1994. They all moved in with David Gray. In early July, although Ethel Webb and Scott moved out of the Gray household, Taylor remained.

Mary Smith, together with her remaining children, including Patrick Reed, left Little Rock and moved into the Gray household on July 21, 1994. Mary obtained employment in a laundromat. While at work, Mary left her children at the Gray household with Taylor and David Gray's father-in-law, who also lived in the Gray household.

The acts of sexual abuse which resulted in Taylor's conviction became known on August

15, 1994. Mary Smith was bathing her three youngest children on that date. Raymond told her that Taylor had touched his private parts. Ten-year-old Patrick told Mary that Raymond was telling the truth and that Taylor had touched his private parts too.

After the abuse of Raymond and Patrick was disclosed, Scott Webb told his mother that Taylor had also touched him inappropriately. Mary Smith contacted the police on August 17, 1994.

### Procedural Facts

Ethel Webb was called as a witness for the State at Taylor's trial. Ethel Webb was the mother of the alleged victim Scott Webb and grandmother of the alleged victims Patrick Reed and Raymond Smith. During her direct testimony, Ethel Webb burst into tears and, apparently, was unable to continue testifying. The trial judge, *sua sponte,* asked her to step down from the witness stand and advised the jury that the court would break for lunch.

As Ethel Webb passed the defense table, she continued crying and shouted emotionally at Taylor, "You, you!" The trial judge immediately gave a *sua sponte* instruction to the jury:

Ladies and gentlemen of the jury, obviously this case has strong emotional overtones, and it may be unpleasant for you, but I have to remind you that your verdict in this case has to depend on the evidence in this case and not on feelings that may be generated in you by the evidence.

After the jury was dismissed and had left the courtroom, Taylor's trial attorney moved for a mistrial. The trial judge denied that motion:

I expect that ... on cross examination [defense counsel] will be able to make it clear to the jury that this particular witness has no direct evidence that sexual abuse occurred, much less that defendant is guilty of it. And although it is apparent to everyone that [Ethel Webb] believes that her children or grandchildren have

---

1. The names of all individuals referred to in this opinion, other than the defendant, are pseudo- nyms. Supr.Ct.R. 7(d).

suffered at the hands of defendant, that is her belief and it is a belief that is not based on personal knowledge. It is a belief essentially that is based on what she has been told by others.

I am confident that the jury will readily understand why Miss [Webb] feels the way she does, and that includes the jury's understanding the limited basis for her feelings. Although, so the record is clear, I will indicate that Miss [Webb's] outburst was highly emotional and dramatic, I am comfortable that at this point that outburst, especially taking into consideration the court's *sua sponte* caution that was delivered immediately after the outburst, has not appreciably affected defendant's opportunity to have a fair trial and a verdict that is rendered by a dispassionate or suitably objective jury. So the motion for mistrial is denied.

After denying the mistrial motion, the trial judge elaborated upon the nature of the witness's outburst for the record, as follows:

I am not suggesting that it was theatrics. What I am saying is that that outburst was dramatic in its presence. It's a quiet courtroom. And the witness quite visibly and loudly broke down, so this is not a comment about her intentions or sincerity. It is simply to try to give some feeling to what would otherwise be a somewhat cold record. And the court has denied the motion for a mistrial, but in fairness, it is necessary to impart in the record some flavor of the fact that especially for people, lay people who are not used to seeing witnesses under stress, this was a noteworthy outburst.

The trial judge asked if Taylor's attorney had any objection to having the prosecutor speak with Ethel Webb during the luncheon recess about the importance of keeping her emotions under control in the presence of the jury. Taylor's trial counsel had no objection to that "limited type of instruction from [the prosecutor] to the witness." Ethel Webb completed her testimony after the luncheon recess without any further incident.

2. In that case, the mother of a rape victim was testifying at the trial of the alleged rapist. At the

## Mistrial Motion
## Outburst By Witness

 A trial judge is in the best position to evaluate the prejudicial effect of an outburst by a witness upon the jury. Therefore, the decision on whether to grant a mistrial after an outburst by a witness rests within the trial judge's sound discretion. *Johnson v. State*, Del.Supr., 311 A.2d 873, 874 (1973). The denial of a motion for a mistrial because of a witness's outburst will not be reversed on appeal in the absence an abuse of that discretion or the denial of a substantial right of the complaining party. *Id.; see Weddington v. State*, Del.Supr., 545 A.2d 607 (1988).

 This Court must consider, weigh, and balance several factors in determining whether the witness's outburst was so prejudicial that the trial court abused its discretion in denying the motion for a mistrial or that Taylor was deprived of a substantial right. The first consideration is the nature, persistency, and frequency of the witness's outburst. The second consideration is whether the witness's outburst created a likelihood that the jury would be misled or prejudiced. The third factor to be considered is the closeness of the case. The final consideration is the curative or mitigating action taken by the trial judge.

## Mistrial Denied
## Discretion Exercised Properly

 We have considered each of those factors in the context of this case. First, the record reflects the witness's outburst was apparently pronounced but was not persistent. Although the outburst was dramatic, the actual contents were neutral: "You, you!" Second, the witness's outburst did not create a likelihood that the jury would be misled or prejudiced. The record supports the trial judge's finding that the jury would understand the witness's emotional involvement in a case involving her young relatives and that the isolated outburst would not interfere with the impartiality of the jury's fact-finding process. *Accord State v. Wagstaff*, 202 S.C. 443, 25 S.E.2d 484 (1943).[2] Third, this was not a close case. The State's evidence was strong. Finally, the trial judge took prompt ameliora-

conclusion of her testimony, the mother rushed toward the defendant screaming "I could tear

tive action. The trial judge immediately instructed the jury to cure any potential prejudice which might have been created by the witness's outburst. *See United States v. Xavier*, 3d. Cir., 2 F.3d 1281 (1993). The trial judge encouraged Taylor's trial attorney to bring out during cross-examination that the witness had no personal knowledge of the alleged acts of sexual abuse. The trial judge also directed the prosecutor to speak with the witness about maintaining her self-control in the presence of the jury. Thereafter, no more outbursts occurred.

### Conclusion

The record reflects that the witness's outburst did not deprive Taylor of his right to a fair trial by an impartial jury. *See* Jay M. Zitter, Annotation, *Emotional Manifestations by Victim or Family of Victim During Criminal Trial as Ground for Reversal, New Trial, or Mistrial*, 31 A.L.R.4th 229 (1984 & Supp.1996); *cf. State v. Gens*, 107 S.C. 448, 93 S.E. 139 (1917). The record also reflects that the decision to deny Taylor's motion for a mistrial was a proper exercise of the trial judge's discretion. The judgments of conviction are affirmed.

your eyes out." The South Carolina Supreme Court addressed the effect of an outburst:

We believe the jury could readily understand that the witness in question might have a hostile attitude toward the accused, because of the natural effect of the circumstances on her emotions, although there was nothing whatever in her own testimony tending to show his guilt, and hence her attitude was based solely upon the testimony of others.

*State v. Wagstaff*, 25 S.E.2d at 488.