Darryl COPPER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 55, 2013.

Supreme Court of Delaware.

Submitted: Jan. 29, 2014.

Decided: Feb. 12, 2014.

Gregory M. Johnson, Esquire, Wilmington, Delaware, for appellant.

Kathryn J. Garrison, Esquire, Department of Justice, Georgetown, Delaware, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Darryl Copper ("Copper"), appeals from final judgments entered by the Superior Court following a jury trial, in which he was found guilty of Possession with Intent to Deliver Cocaine, Possession of a Firearm During the Commission of a Felony, Carrying a Concealed Deadly Weapon, and Possession of Drug Paraphernalia. Copper raises one claim on appeal. Copper contends that he was denied his right to a fair trial by an impartial jury because the jurors heard him say that he was not content with the jury and because one juror heard him say that he wanted to take a plea. According to Copper, the only effective remedy was a mistrial.

We have concluded that Copper's arguments are without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

The following facts are described in the State's Answering Brief and are not disputed: [1]

[Darryl] Copper's [ ("Copper") ] criminal charges stem from an incident in which Wilmington police officers witnessed him discard a gun and baggies of crack cocaine as he walked down the street. The officers were patrolling the area in their vehicle. Copper caught their attention as they drove by because he began taking items from his pockets and dropping them onto the ground. One of the items appeared to be a knotted plastic bag containing crack cocaine. As they followed him, Copper also took a gun out of his waistband and tossed it into a flower pot. The officers arrested Copper. In a search incident to arrest, they found approximately five grams of

---

1. Copper provides no statement of facts regarding the underlying crime and instead focuses on the events that transpired once the judicial process commenced.

crack cocaine and twenty-eight rounds of ammunition in his pockets. They found an additional four grams of crack cocaine in a plastic bag near the flower pot containing the gun. The officers also located the bag Copper first discarded. It contained one gram of crack cocaine.

The State charged Copper with several drug-related offenses.[2]

Trial began on August 14, 2012. Jury selection began the same day, during which the events giving rise to this appeal largely occurred. At the conclusion of *voir dire*, the court summoned twelve jurors to the jury box and gave the parties the opportunity to exercise peremptory strikes. Defense counsel advised the court that she was content with the jury. Copper disagreed, however, and stated, "No we're not content. We're not content. I'm not content. I don't like that jury." This comment was made in front of the jury panel.

The court then held a sidebar conference, during which defense counsel moved to strike the entire jury pool because of her concern that Copper's comments may have prejudiced the jury. The court denied the motion and reiterated that it is up to the lawyer's professional judgment, not the client's, to determine whom to strike from the jury.

After the sidebar conference, defense counsel repeated that she was content with the jury as selected. Copper again, in front of the jury, said, "No, I'm not content." The court then drew two alterna- tive jurors, neither of whom were challenged by the State or the defense. The jury was sworn and led out of the courtroom. As the jury was leaving the room, the trial judge questioned Copper about his discontent with the jury.[3] During that conversation, Copper announced, "You can just give me the deal for three years. I'll sign it now."

After a brief recess, defense counsel advised the trial judge that Copper wished to accept the most recent plea offer made by the State, but "[she] was not sure if [Copper] want[ed] to take it or not." At the same time, defense counsel moved for a mistrial based on Copper's "outburst" in front of the jury that was "tantamount to saying, yes, I'm guilty." Although the State did not oppose the defense's motion for a mistrial, the trial judge denied the motion because "[i]t was something brought upon by the defendant himself and he knows better."

Prior to opening statements, the trial judge addressed the jury regarding the effect of Copper's comments, giving a form of curative instruction:

> Ladies and gentlemen, I don't know if you were aware of this, but apparently the defendant made a statement that you may or may not have heard shortly before you were excused for the break. If you did hear it, I want to you to ignore what he had to say and disregard it. What the defendant had to say has nothing at all to do with whether he is guilty in this case.

---

2. Possession with Intent to Deliver A Schedule II Controlled Substance (16 *Del. C.* § 4751), Possession of a Firearm During the Commission of a Felony (11 *Del. C.* § 1447A), Carrying a Concealed Deadly Weapon (11 *Del. C.* § 1442), Possession of a Controlled Substance Within One Thousand Feet of a School (16 *Del. C.* § 4767), Possession of a

Controlled Substance Within Three Hundred Feet of a Park (16 *Del. C.* § 4768), Possession of Drug Paraphernalia (16 *Del. C.* § 4771), and Resisting Arrest (11 *Del. C.* § 1257(b)).

3. It is clear from the chronology of events that the jury was not entirely out of the courtroom at the time this discussion began.

As I—the defendant—comes in before you presumed to be innocent and he continues in his innocence until the State, by way of evidence from the witness stand, has proven his guilt beyond a reasonable doubt. And if you—if the State does not prove his guilt beyond a reasonable doubt, then the defendant should be acquitted as being innocent. Thank you.

At the beginning of the second day of trial, the court, *sua sponte*, conducted a *voir dire* of the jury about Copper's comments the previous day. Each juror was brought individually before the judge and trial counsel and asked an open-ended question: "Did you hear the defendant at any time say anything during the course of the proceedings yesterday?" If a juror answered in the affirmative, he or she was then asked what exactly they had heard. The trial judge then followed up with several other questions after the juror responded. Importantly, the trial judge always asked whether "[the comment] would make it difficult for [the juror] to be fair and unbiased in this case."

The *voir dire* revealed that eight of the twelve jurors and two alternates recalled Copper commenting that he was not happy with the jury. Of those ten, one was excused after indicating that she would have difficulty proceeding in an unbiased manner (Juror No. 5).

One juror could not recall what Copper said and two jurors did not remember

Copper making any comments. One other juror, Juror No. 11, recalled hearing Copper state that he wanted to take the plea. Juror No. 11 was excused. Thus, at the conclusion of *voir dire*, two jurors had been excused and replaced with the two alternates, leaving a jury of twelve intact. Although defense counsel did not formally move for a mistrial, the trial judge denied it "to the extent there [was] still an application for a mistrial."

On August 16, 2012, the jury found Copper guilty of Possession with Intent to Deliver Cocaine, Possession of a Firearm During the Commission of a Felony, Carrying a Concealed Deadly Weapon, and Possession of Drug Paraphernalia.[4]

### *Standard of Review*

This Court "review[s] a trial judge's denial of a motion for a mistrial for abuse of discretion because the trial judge 'is in the best position to assess the risk of any prejudice resulting from trial events.'"[5] This is especially true where the prejudice stems from an outburst in the presence of the jury.[6] Where the claim involves the infringement of a constitutionally protected right, this Court reviews the claim *de novo*.[7]

### *Right to an Impartial Jury*

An accused has a constitutional right to trial by an impartial jury of his peers.[8] "The right to a fair trial before an impartial jury of one's peers is fundamental to the American criminal justice sys-

---

**4.** The State entered a *nolle prosequi* as to the Resisting Arrest charge and the trial judge dismissed the charge of Possession of a Controlled Substance Within One Hundred Feet of a School.

**5.** *Sykes v. State*, 953 A.2d 261, 267 (Del.2008) (citations omitted).

**6.** *Taylor v. State*, 690 A.2d 933, 935 (Del.1997) (applying abuse of discretion standard to re-

view a denial of a motion for a mistrial because "[a] trial judge is in the best position to evaluate the prejudicial effect of an outburst by a witness upon the jury").

**7.** *Sykes v. State*, 953 A.2d at 267.

**8.** *Hughes v. State*, 490 A.2d 1034, 1040 (Del. 1985) (citing *Irvin v. Dowd*, 366 U.S. 717, 721, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)).

tem."[9] "Both the Sixth Amendment to the United States Constitution and Article I, § 7 of the Delaware Constitution guarantee defendants in criminal cases the right to have their cases brought before an impartial jury."[10]

■ Juror impartiality must be maintained not only in the interest of fairness to the accused, but also to assure the overall integrity of the judicial process.[11] This Court has noted that the trial court is in the best position to assess whether a mistrial should be granted.[12] "Granting a mistrial is an extraordinary remedy, warranted 'only when there is manifest necessity' and 'no meaningful and practical alternatives.'"[13]

This Court has found that it is not an abuse of discretion for a trial court to deny a mistrial where the defendant's own disruptive conduct is alleged to have tainted his jury. In *Alomari v. State*,[14] the defendant claimed he was prejudiced because the jury viewed his disruptive conduct and subsequent removal from the courtroom during jury selection.[15] This Court found that "the trial court's handling of defendant's disruptive behavior was appropriate under the circumstances and did not deny defendant his right to a fair trial."[16]

Similarly, in *Verdijo v. State*,[17] the defendant went into a tirade about prejudice while testifying.[18] The trial judge removed the jury and found the defendant in contempt.[19] The trial judge later instructed the jury not to allow the disruption to affect their fair consideration of the facts in the case.[20] On appeal, the defendant argued that his right to a fair trial was compromised because the jurors may have witnessed him being found in contempt.[21] This Court found that "the trial judge acted properly in removing the jury immediately when [defendant's] outburst began and instructing them appropriately when the trial resumed."[22]

### Mistrial Properly Denied

■ "A trial judge is in the best position to evaluate the prejudicial effect of an outburst by a witness upon the jury."[23] As set forth in *Taylor v. State*,[24] this Court weighs four factors when "determining whether a witness' outburst was so prejudicial that the refusal to grant a mistrial constituted an abuse of discretion, or deprived the defendant of a substantial right."[25] Although that case involved an

9. *Flonnory v. State*, 778 A.2d 1044, 1051 (Del. 2001).

10. *Id.* at 1052.

11. *Knox v. State*, 29 A.3d 217, 222–23 (Del. 2011).

12. *Bowe v. State*, 514 A.2d 408, 410 (Del. 1986).

13. *Burns v. State*, 968 A.2d 1012, 1018 (Del. 2009) (quoting *Dawson v. State*, 637 A.2d 57, 62 (Del.1994)) (internal quotation omitted).

14. *Alomari v. State*, 587 A.2d 454 (TABLE), 1991 WL 22374 (Del. Feb. 14, 1991).

15. *Id.* at *3.

16. *Id.* at *4.

17. *Verdijo v. State*, 1990 WL 109885 (Del. June 29, 1990).

18. *Id.* at *5.

19. *Id.*

20. *Id.*

21. *Id.*

22. *Id.*

23. *Taylor v. State*, 690 A.2d at 935.

24. *Taylor v. State*, 690 A.2d 933 (Del.1997).

25. *Burns v. State*, 968 A.2d 1012, 1018 (Del. 2009) (citing *Taylor v. State*, 690 A.2d 933, 935 (Del.1997)).

outburst by a witness while testifying, both parties agree that the same four-factor balancing test applies in this case, where the defendant, during jury selection, made potentially prejudicial comments during an outburst.[26] Those factors are: (1) "the nature, persistency, and frequency of the witness's outburst"; (2) "whether the witness's outburst created a likelihood that the jury would be misled or prejudiced"; (3) "the closeness of the case"; and (4) "the curative or mitigating action taken by the trial judge." [27]

First, Copper's comments were neither frequent nor persistent. His comments were made prior to the beginning of trial during the jury selection process, and he did not make any other disruptive comments during the course of the trial. Appellate counsel suggests that because of Copper's original desire to proceed *pro se*, "it is reasonable to conclude that he merely wished to make the court aware of his concerns with the jury selection when he felt that his attorney was not doing so." Accepting this proposition supports the conclusion that Copper's comments regarding the jury were an isolated occurrence. Further, his comment about accepting a plea agreement was also a one-time occurrence.

Second, we examine the nature of the comments themselves. Copper's comments about his dissatisfaction with the jury were relatively benign. They did not highlight any individual juror and did not isolate any particular trait, such as race, as a motivating factor for his discontent. They were general comments about Copper's dissatisfaction with the jury and were not aimed at any one particular person.[28] Moreover, the one juror who during *voir dire* questioned her impartiality after hearing the comment was excused.

The State admits that Copper's comment about accepting a plea agreement was prejudicial and agrees with Copper's trial counsel's perception that the comment was "tantamount to saying, yes, I'm guilty." Because the comment was made by the defendant rather than a witness, as was the case in *Taylor* and in much of the prior case law, the prejudicial nature of the comment is undoubtedly amplified. Thus, although the comments were all infrequent and not persistent, the specific comment regarding the plea agreement was prejudicial. But, even though that one comment was prejudicial, the trial judge's curative and mitigating actions as described below, eliminated any prejudice.

Third, the closeness of the case suggests that Copper's constitutional right to a fair trial was not infringed. The State correctly characterizes the nature of the underlying crime when it writes: "[Copper] was caught red-handed with crack cocaine and a fully-loaded gun." At trial, the two police officers who witnessed Copper dispose of several small plastic baggies and a handgun on the side of a road testified as to what they saw. The officers also testified about the fruits of their search incident to arrest, which included five grams of crack cocaine and .22 caliber ammuni-

**26.** The State first cites the applicable test in its Answering Brief. In his reply brief, Copper states that "[t]he State correctly relies upon *Taylor v. State* as setting forth the balancing test for a mistrial."

**27.** *Burns v. State,* 968 A.2d at 1018 (quoting *Taylor,* 690 A.2d at 935) (internal quotation marks omitted).

**28.** Juror No. 6 heard Copper say "not six." At the request of counsel, the court explained to Juror No. 6 that Copper was saying he wanted to strike six jurors, not Juror No. 6. Juror No. 6 stated that he could remain impartial and that he did not take personal offense to the statement.

tion rounds. The evidence presented at trial was overwhelmingly against Copper.

 Fourth, the mitigating action taken by the trial judge—the curative instruction and additional jury *voir dire*—ensured that any potential prejudice was eliminated. After all three of Copper's comments (the two regarding the jury and one regarding his desire to accept a plea agreement), the trial judge immediately issued the following curative instruction when the jury returned:

Ladies and gentlemen, I don't know if you were aware of this, but apparently the defendant made a statement that you may or may not have heard shortly before you were excused for the break. If you did hear it, I want to you to ignore what he had to say and disregard it. What the defendant had to say has nothing at all to do with whether he is guilty in this case.

As I—the defendant—comes in before you presumed to be innocent and he continues in his innocence until the State, by way of evidence from the witness stand, has proven his guilt beyond a reasonable doubt. And if you—if the State does not prove his guilt beyond a reasonable doubt, then the defendant should be acquitted as being innocent. Thank you.

"A trial judge's prompt curative instructions 'are presumed to cure error and adequately direct the jury to disregard improper statements.'"[29] Further, "juries are presumed to follow the trial judge's instructions."[30] Thus, the trial judge's instruction was both broad enough to cover all three of Copper's comments and presumably was sufficient to cure error.

 In addition to the curative instruction, the trial judge began the second day of trial with a *voir dire* of the jury regarding Copper's comments. "The purpose of *voir dire* examination is to provide the court with sufficient information to decide whether prospective jurors can render an impartial verdict based on the evidence developed at trial and in accordance with applicable law."[31] "Further, the trial court is given broad discretion concerning the scope and form of questions to be asked on *voir dire*."[32]

The trial judge properly exercised this broad discretion. He asked each juror an open-ended question to gauge the juror's recollection of Copper's comments. The trial judge asked some iteration of the following: "Did you hear the defendant at any time say anything during the course of the proceedings yesterday?" After several follow-up questions which depended upon the juror's initial response, the trial court judge always asked whether "[the comment] would make it difficult for [the juror] to be fair and unbiased in this case."

Ten of the fourteen jurors, including alternates, recalled Copper commenting that he was not happy with the jury. Of those ten, one was excused after indicating that she would have difficulty proceeding in an unbiased manner (Juror No. 5). Only one recalled Copper's comment about the plea agreement, and that juror was excused. Three other jurors either could not recall the substance of Copper's comments or did not remember Copper making any comment at all.

29. *Revel v. State,* 956 A.2d 23, 27 (Del.2008) (quoting *Pena v. State,* 856 A.2d 548, 551 (Del.2004)).

30. *Id.* (quotations omitted).

31. *Hughes v. State,* 490 A.2d 1034, 1041 (Del. 1985) (emphasis added) (citations omitted).

32. *Lynch v. State,* 588 A.2d 1138, 1140 (Del. 1991) (citation omitted).

The trial judge properly exercised his discretion during *voir dire* questioning and eliminated any sources of potential prejudice before the jury began its deliberation. Copper's appellate counsel makes much of the fact that the trial judge did not ask whether the jurors were aware of any other comments, presumably from conversations with other jurors. However, the record reflects that Copper's trial counsel was given the opportunity to supplement the court's questions, but chose not to do so.

Copper asks this Court to broaden its analysis beyond the balancing test laid out in *Taylor* and to consider the content of the outburst rather than its frequency. Copper cites *Burns v. State*[33] in making this application, but *Burns* does not support this proposition. In *Burns*, a witness for the State made an outburst in the form of a question directed at the defendant.[34] We found that the trial court did not abuse its discretion in denying the motion for a mistrial since three of the four *Taylor* factors weighed heavily in favor of the State.[35] Additionally, the defendant's claim on appeal that the content of the witness's outburst was prejudicial was dismissed by this Court.[36]

Although Copper's comment about taking the plea directly implicated his innocence, the comment was within his own control. We have carefully considered the *Taylor* factors and have applied them to Copper's comments during jury selection. We hold that the trial judge's denial of his motion for a mistrial did not violate his fundamental right to a fair trial by an impartial jury.

---

**33.** *Burns v. State,* 968 A.2d 1012 (Del.2009).

**34.** *Id.* at 1015.

***Conclusion***

The judgments of the Superior Court are affirmed.