IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TROY DIXON, | § | |
| | § | No. 653, 2013 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| STATE OF DELAWARE, | § | New Castle County |
| | § | |
| Plaintiff-Below, | § | Cr. I.D. No. 1211005646A |
| Appellee. | § | |

Submitted: September 24, 2014
Decided: October 1, 2014

Before **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices.

## O R D E R

This 1st day of October 2014, upon consideration of the parties' briefs and the record below, it appears to the Court that:

1.     The appellant, Troy Dixon ("Dixon"), appeals his convictions for Assault in the Second Degree, Possession of a Firearm During the Commission of a Felony, and Resisting Arrest. The State's theory was that Dixon fired shots into a car four days after certain events took place at the Rebel nightclub and the Thunderguards clubhouse where another individual, Kevin Bell ("Bell"), had been fatally shot. The car Dixon allegedly fired upon contained three occupants: Darren Brown ("Brown"), the driver, Maurice Harrigan ("Harrigan"), a long-time associate of Bell's, and Aaron Summers ("Summers"). Brown was driving

Harrigan and Summers to Bell's funeral when Dixon allegedly shot at the back of the car hitting Summers in the back of the neck.  Dixon argues on appeal that the Superior Court erred in: (i) allowing two photographic lineups into evidence; (ii) denying a mistrial based on a witness' unsolicited hearsay statement; (iii) admitting evidence of certain events on November 4, 2012 (four days before Dixon was arrested) that occurred at the Rebel nightclub and the Thunderguards motorcycle club where Bell was shot and killed; and (iv) denying a mistrial after jurors had contact with two trial spectators in and outside of the courthouse.  After carefully considering these issues, we agree with the Superior Court's judgment and affirm.

2.      Dixon first claims that the Superior Court erred by admitting two photographic lineups into evidence because they were confusing and prejudicial.  Although neither witness positively identified Dixon as the shooter, Brown was able to identify the shooter as having a complexion and facial hair similar to Dixon's.  Harrigan was able to identify Dixon as the individual with whom he argued at the Rebel nightclub.  The trial court found Harrigan's testimony to be relevant to the State's motive theory.  We review a trial judge's decision to admit or exclude evidence, over a party's objection, for abuse of discretion.[1]  If a party did not raise an objection below, we review for plain error.[2]  Plain error is an error

---

[1] *Wright v. State*, 25 A.3d 747, 752 (Del. 2011).

[2] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

that is so clearly prejudicial to a defendant's substantial rights as to jeopardize the fairness and integrity of the trial.[3]

3.  In this case, Dixon objected to the testimony about the photo lineup shown to Brown but did not object to the photo lineup shown to Harrigan. Ultimately, the Superior Court concluded that any objection to the admission of the lineup evidence shown to Brown went to the weight of the evidence and not its admissibility.[4]

4.  Dixon does not cite to any facts in the record or case law in support of his contention that admission of the lineup evidence was "confusing and problematic" and denied him the right to a fair trial. Although neither witness could positively identify Dixon as the shooter, Brown was able to identify the shooter as having a complexion and facial hair that resembled Dixon's; and Harrigan was able to identify Dixon as the man he encountered at the Rebel nightclub with whom he had an argument. The trial court admitted Harrigan's testimony, finding it to be relevant to the State's motive theory. Both lineups provided some circumstantial evidence connecting Dixon to the crime.[5] We do not believe the Superior Court abused its discretion in admitting the lineup evidence

---

[3] *Id.*

[4] Appellant's Amended Appendix at A105.

[5] *See Bohan v. State*, 2012 WL 2226608, *1 (Del. Jun. 15, 2012).

3

shown to Brown.  Nor did it commit plain error in admitting the lineup evidence shown to Harrigan.

5.    Dixon next argues that the Superior Court erred in refusing his request for a mistrial after Harrigan offered unsolicited hearsay testimony.  We review the denial of a motion for a mistrial for abuse of discretion as the trial judge is in the best position to assess the risk of any prejudice resulting from trial events.[6]  The Superior Court took immediate curative efforts to strike Harrigan's unresponsive comment and to instruct the jury to disregard the statement.  The jury is presumed to have followed that instruction.[7]  Based upon our review of the record below, we affirm the Superior Court's denial of a mistrial for the reasons cited by the trial court.[8]

6.    Dixon next contends that the trial court erred in permitting the testimony concerning the events that occurred at the Rebel nightclub and the Thunderguards club.  Dixon, however, includes no citation to the record of any specific evidence or testimony that he asserts was erroneously admitted.  This Court has consistently held that the cursory treatment of an issue is insufficient to

---

[6] *Copper v. State*, 85 A.3d 689, 692 (Del. 2014) (citing *Sykes v. State*, 953 A.2d 261, 267 (Del. 2008)).

[7] *Revel v. State*, 956 A.2d 23, 27 (Del. 2008).

[8] Appellant's Amended Appendix at A228-30.

preserve an issue for appeal.[9]  Accordingly, on the record before us, we conclude that Dixon has waived the issue on appeal.

7.      Dixon finally claims that the Superior Court erred in denying his motion for a mistrial after several jurors had contact with two trial spectators in and outside of the courthouse. While the interactions between the jurors and the spectators are troubling, we have provided trial judges "very broad discretion in deciding whether a case must be retried or the juror summoned and investigated due to alleged exposure to prejudicial information or improper outside influence."[10]  To impeach a jury verdict, the defendant has the burden of establishing both improper influence and actual prejudice to the impartiality of the juror's deliberations.[11]  However, "[i]f a defendant can prove a reasonable probability of juror taint, due to egregious circumstances, that are inherently prejudicial, it will give rise to a presumption of prejudice and the defendant will not have to prove actual prejudice."[12]

8.      The record reflects that, after the first full day of trial, two spectators at the trial encountered several jurors while standing near the courthouse elevators. The bailiff did not allow the jurors to get on the same elevator as the spectators and

---

[9] *Ploof v. State*, 75 A.3d 811, 822 (Del. 2013).

[10] *Sheeran v. State*, 526 A.2d 886, 897 (Del. 1987).

[11] *See Flonnory v. State*, 778 A.2d 1044, 1054 (Del. 2001).

[12] *Id.* (citing *Massey v. State*, 541 A.2d 1254, 1259 (1988)).

instead sent the jurors down on the freight elevator.[13] When the jurors got off the elevator, Juror No. 10 stated that he noticed the same two spectators "eyeballing" him.[14] Juror No. 7 stated that as he walked past the two men, one of them tried to get the juror's attention by saying, "Hey, you.  Hey buddy."[15] The juror kept walking without responding, and the encounter ended.  There was no actual exchange of words or introduction of new factual information about the case.[16]

9.  The morning after this occurrence, the trial judge conducted an individual *voir dire* with each juror in the presence of the prosecutor and defense counsel.[17]  At the end of the *voir dire*, both defense counsel moved for a mistrial, which the judge denied.

10.  We review the denial of a motion for a mistrial for abuse of discretion as the trial judge is in the best position to assess the risk of any prejudice resulting from trial events.[18]  Where the claim involves the infringement of a constitutional right, we review the claim *de novo*.[19]  Both the Sixth Amendment of the United

---

[13] Appellant's Amended Appendix at A125.

[14] Appellant's Amended Appendix at A139.

[15] Appellant's Amended Appendix at A135-36.

[16] *Cf. Baird v. Owczarek*, 93 A.3d 1222, 1230 (Del. 2014) (holding that a juror's internet research relating to the case "ha[d] the potential to prejudicially compromise the jury's function under the Delaware Constitution to *determine facts* exclusively based upon evidence that is presented in the courtroom") (emphasis in original)).

[17] Appellant's Amended Appendix at A134-86.

[18] *Copper*, 85 A.3d at 692 (citing *Sykes*, 953 A.2d at 267).

[19] *Copper*, 85 A.3d at 692.

States Constitution and Article I, § 7 of the Delaware Constitution provide defendants in criminal cases with a fundamental right to a fair trial and an impartial jury.[20] As this Court has recently stated in *Copper*, "[j]uror impartiality must be maintained not only in the interest of fairness to the accused, but also to assure the overall integrity of the judicial process."[21] Further, "[g]ranting a mistrial is an extraordinary remedy, warranted only when there is manifest necessity and no meaningful and practical alternatives."[22] This Court has held that *voir dire* questioning that eliminates any source of potential prejudice before the jury begins deliberations is one practical alternative remedy.[23] When a judge determines that the jury may have been exposed during the course of trial to an extraneous influence that raises a serious question of possible prejudice, the trial judge should conduct a *voir dire* of jurors to ascertain the extent of their exposure to the extraneous influence and to assess its prejudicial effect.[24] The initial questioning concerning whether any juror was affected by the potentially prejudicial influence may be carried out collectively, but if any juror indicates that he or she has been

---

[20] *Id.* at 693 (citing *Flonnory*, 778 A.2d at 1052).

[21] *Copper*, 85 A.3d at 693 (citing *Knox v. State*, 29 A.3d 217, 222-23 (Del. 2011)).

[22] *Copper*, 85 A.3d at 693 (quoting *Burns v. State*, 968 A.2d 1012, 1018 (Del. 2009)) (internal quotation marks omitted).

[23] *Copper*, 85 A.3d at 695 ("[T]he mitigating action taken by the trial judge – the curative instruction and additional jury *voir dire* – ensured that any potential prejudice was eliminated.").

[24] *See id.* at 695-96; *Flonnory*, 778 A.2d at 1053-55; *Massey*, 541 A.3d at 1256-59; *Hughes v. State*, 490 A.2d 1034, 1045-48 (Del. 1985).

exposed to the extraneous influence, there should be individual questioning of that juror, outside of the presence of any other juror, to determine the extent of the juror's exposure and its effects on the juror's ability to render an impartial verdict.

11. In this case, the trial judge conducted a thorough *voir dire* of each juror about the juror's previous day's contact with the spectators and the juror's subsequent discussions with other jurors about the incident.[25] The trial judge asked each juror open-ended questions about what each of them had seen.[26] The trial judge also questioned the jurors as to whether any of the events might affect their ability to be fair and impartial in this case. Juror No. 1 "felt uncomfortable,"[27] but stated that nothing would affect his or her ability to be fair and impartial.[28] Juror No. 3 stated that he or she might be "a little apprehensive" and had discussed with other jurors "leaving in groups."[29] Yet, each one indicated he or she would have no bias for or against either side.

12. As the trial court pointed out, the public nature of any courthouse, and the layout of the New Castle County Courthouse in particular, which does not provide a separate elevator for jurors, makes some contact between spectators and

---

[25] Appellant's Amended Appendix at A125-86.

[26] Appellant's Amended Appendix at A134-86.

[27] Appellant's Amended Appendix at A148.

[28] Appellant's Amended Appendix at A147.

[29] Appellant's Amended Appendix at A152-53.

8

jurors inevitable. In this case, the only contact involved "eyeballing" and the statement, "Hey, you. Hey, buddy."

13. The trial judge found upon the conclusion of the *voir dire* that the facts developed did not warrant the remedy of a mistrial. The court stated that the events did not rise to the level of "intimidation."[30] There was no actual exchange of words or information about the case. Moreover, the trial judge's *voir dire* of each juror reflected that, notwithstanding the spectator contact, each juror could continue to be impartial and render a fair verdict. Under the circumstances, the minimal contact between the jurors and the spectators does not amount to improper influence and actual prejudice to the impartiality of the juror's deliberations. Further, Dixon has not shown that there were egregious circumstances of juror taint that were inherently prejudicial to give rise to a presumption of prejudice.

14. Our sister courts in California and Massachusetts have dealt with similar situations. In *People v. Panah*, "supporters of defendant were following or 'shadowing' the jurors during breaks in their deliberations, while others, including [defendant's] mother, were clustering near the jury while it was assembling on breaks."[31] One of the jurors reported feeling intimidated.[32] Although the California Supreme Court found that a claim of juror bias was forfeited because the

---

[30] Appellant's Amended Appendix at A192.

[31] *People v. Panah*, 107 P.3d 790, 846 (Cal. 2005).

[32] *Id.*

9

defense did not request a *voir dire* or raise an objection, the court nevertheless found the claim meritless.[33] The court held that the jurors' concern did not support a claim that defendant was denied an impartial jury.[34] In *Commonwealth v. Womack*, comments to the jurors "smack[ed] of juror intimidation."[35] The trial judge conducted a *voir dire* of the jurors individually and four of the thirteen jurors expressed some concern.[36] One of the jurors "expressed being 'a little concerned when I leave . . . . There seems to be a lot of people in the area that are just kind of staring down.'"[37] Another juror stated: "[W]hen we walk in or come back from lunch, they horde around the front of the building. They don't easily let you pass. And there are comments made . . . [such as] 'That's one of the jurors.' And then I just try and walk fast."[38] A third juror was made uncomfortable when the juror walked out of the courthouse on the first day and one of the spectators asked, "How's your day?"[39] A fourth juror expressed discomfort when spectators were "gathering outside the court room when we're trying to leave, and the possibility that . . . they'll see where our cars are parked."[40] However, all the jurors assured

---

[33] *Id.*

[34] *Id.*

[35] *Commonwealth v. Womack*, 929 N.E.2d 943, 952 (Mass. 2010).

[36] *Id.*

[37] *Id.* at 953.

[38] *Id.*

[39] *Id.*

[40] *Id.*

the judge that their experience would not affect their ability to remain fair and impartial, and the defense counsel did not object to the *voir dire*.[41] The Massachusetts Supreme Court deferred to the trial judge's determination that each juror remained impartial.[42]

15. Based on the record here, we find no error in the Superior Court's determination to deny the motion for a mistrial.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is hereby AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice

---

[41] *Id.*

[42] *Id.* at 954.

11