IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARCKENLEY GUSTAVE, | § | |
| | § | No. 382, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2101006788 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 21, 2025
Decided: July 29, 2025

Before **VALIHURA**, **TRAYNOR**, and **GRIFFITHS** Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Eugene J. Maurer, Jr., Esquire, Molly R. Dugan, Esquire, EUGENE J. MAURER, JR., P.A., Wilmington, Delaware for Appellant.

Andrew R. Fletcher, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware for Appellee.

**VALIHURA**, Justice:

## I.   INTRODUCTION

After Marckenley Gustave was accused of sexually assaulting his eleven-year-old cousin, I.G., he reached out to the police.  During his recorded interview with Detective Phillips, Gustave made incriminating statements, indicating that he was scared after I.G. was taken to the hospital and that he had slept in I.G.'s bed with her on at least five occasions.  He offered no explanation for doing so.  When Gustave later testified in his own defense at trial and made contradictory statements, the State offered one short video clip of his recorded interview during its cross-examination of him.  The State later offered both this video clip and another short video clip in its rebuttal case during direct examination of Detective Phillips and referenced the contents of the video clips during closing arguments.  The State did not move to have the video clips admitted as State's exhibits until after the close of evidence, and the trial court ruled that they would be court exhibits.  After the trial court discovered that due to a clerical error, the video clips had been mistakenly given to the jury, it promptly removed the video clips and gave the jury a curative instruction.  The trial court denied Gustave's immediate motion for a mistrial.

The jury convicted Gustave of three counts of Rape First Degree and three counts of Unlawful Sexual Contact First Degree.  Gustave timely moved for a new trial on the same grounds, which the trial court also denied.  Gustave was sentenced to 81 years of incarceration and now appeals his conviction.  We conclude that the trial court applied the correct standards to evaluate Gustave's motions, and we agree that Gustave failed to demonstrate the required prejudice.  Accordingly, we AFFIRM Gustave's convictions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On January 13, 2021, eleven-year-old I.G. told her mother for the first time that Marckenley Gustave, the mother's 22-year-old cousin, had been raping her.[1] I.G. moved to the United States from Haiti when she was in third grade. She first lived in New Jersey and then in Delaware, where she finished elementary school.[2] Gustave had been living with I.G. and her mother since shortly after I.G. moved to Delaware, while I.G. was still in elementary school. Because I.G.'s mother worked the swing shift, from approximately 3:00 in the afternoon until midnight each day, I.G. was often home alone with Gustave after school.

I.G. testified about five separate occasions when they were home alone together and Gustave sexually assaulted her. The sexual assaults began when I.G. saw Gustave masturbating in the living room while he was watching pornography.[3] In the first incident, after I.G. saw Gustave masturbating, Gustave asked her if she wanted to touch his penis, wrapped her hand around his penis, and had her put her mouth on his penis.[4] Gustave pushed her head down, but I.G. stopped when he ejaculated because she did not like the

---

[1] App. to Opening Br. at A50, A60. There was some confusion about I.G.'s age as of January 2021 in the briefs and in her trial testimony, but I.G. testified clearly that her date of birth is August 26, 2009. *Id.* at A50 (I.G. Test.).

[2] *Id.* at A50–52 (I.G. Test.).

[3] *Id.* at A63 (I.G. Test.).

[4] *Id.* at A64 (I.G. Test.).

3

taste of semen.[5]   After this incident, Gustave purchased gum for I.G. to use when performing oral sex on him.[6]   Gustave also communicated with I.G. via text about their sexual contact, asking her if she wanted to engage in sexual activities when he got home and offering to buy her gum because he knew she did not like the taste of semen.[7]

In the second incident, Gustave got into bed with I.G., put his mouth on her breast, and wrapped her hands around his penis.[8]   In the third incident, Gustave found I.G. in her bedroom, asked if she wanted to "try something," then removed their clothes and partially inserted his penis into her vagina.[9]   In another incident, Gustave made her bend over her bed and tried to insert his penis into her vagina.[10]

In the final incident, I.G. was playing video games in the living room when Gustave asked her, "Do you want to do it?"[11]   She said no and told him she was on her menstrual cycle.  Gustave then pulled his pants below his knees, removed I.G.'s pants and underwear, put her on top of him, and tried to insert his penis into her vagina.[12]   I.G. told him again that she did not want to engage in sexual activities with him, got off of him, and went back

---

[5]  *Id.* at A64–65 (I.G. Test.).

[6]  *Id.* at A80–81 (I.G. Test.).

[7]  *Id.* at A75–76 (I.G. Test.).

[8]  *Id.* at A65–66 (I.G. Test.).

[9]  *Id.* at A67–68 (I.G. Test.).

[10]  *Id.* at A69 (I.G. Test.).

[11]  *Id.* at A70 (I.G. Test.).

[12]  *Id.* at A72–73 (I.G. Test.).

to playing video games.  Gustave then inserted two fingers and "played" with her vagina while he masturbated.[13]

About a week later, I.G. told her mother about the sexual abuse for the first time.[14] After I.G. told her mother, her mother called the police and took I.G. to Nemours Children's Hospital to undergo a rape examination.[15]  I.G.'s physical examination showed no signs of physical trauma, but her urine and swab tests showed a positive result for chlamydia.[16]

The next day, Detective Christopher Phillips interviewed Gustave at the police station.[17]  During the interview, which was recorded, Gustave told Detective Phillips that he was afraid because I.G. had been taken to the hospital and that he had slept in I.G.'s bed on five occasions but could not provide an explanation for doing so.[18]  While at the police station, Gustave agreed to provide a urine sample, which also showed a positive result for

---

[13]  *Id.* at A74 (I.G. Test.).

[14]  *Id.* at A75 (I.G. Test.).  The examining forensic nurse at Nemours Children's Hospital testified that I.G. told the examining physician that the last sexual assault had occurred about three days prior to her examination, on January 10, 2021.  *Id.* at A102 (Gorman-Zolochik Test.).

[15]  *Id.* at A170 (Regina Gustave Test.).

[16]  *Id.* at A110–11 (Gorman-Zolochik Test.), A134–35 (Deutsch Test.).  Gorman-Zolochik, an emergency and forensic nurse at Nemours Children's Hospital, testified that "[i]t's very typical to have no signs or trauma following any form of sexual assault."  *Id.* at A111 (Gorman-Zolochik Test.).  With respect to the chlamydia testing, Dr. Deutsch explained that "the initial study that is run by the Nemours lab is referred to as a screening test, and then there's a subsequent confirmatory test that's a second test that's run on the sample that is processed by an external lab."  *Id.* at A135 (Deutsch Test.).  The second test on the same sample done by an external facility "eliminates the possibility that the lab test is inaccurate."  *Id.* (Deutsch Test.).

[17]  *Id.* at A213 (Phillips Test.).

[18]  *Id.*  These two statements to Detective Phillips comprise the two short video recordings that were played at trial and marked as Court Exhibits 1 and 2.

chlamydia.[19]  After Gustave's interview, he abandoned his job and the police could not locate him for approximately three weeks.[20]  On February 4, 2021, a detective with the U.S. Marshal's Fugitive Task Force found Gustave and arrested him.[21]

### B. *Procedural Background*

On October 11, 2021, a New Castle grand jury indicted Gustave on three counts of Rape First Degree, one count of Rape Second Degree, and two counts of Unlawful Sexual Contact First Degree.  The Superior Court held a five-day jury trial that began on June 22, 2023.  During the trial, I.G. testified about the sexual assaults and Gustave's related text messages to her.

Gustave chose to testify in his own defense.[22]  As an explanation for why he slept in her bed, he testified that he and I.G. would often play video games together and that he would sometimes fall asleep while playing video games with her.[23]  He also testified that he was not aware that I.G. had been taken to the hospital on the date of his interview with Detective Phillips and so, he would not have evaded the police for that reason.[24]

On cross-examination of Gustave, and in order to impeach the truthfulness of Gustave's testimony about why he slept in I.G.'s bed with her, the State introduced a short video clip of Gustave's statement recorded during his January 2021 interview with

---

[19]  *Id.* at A211 (Gustave Test.).

[20]  *Id.* at A180–81 (Cahall Test.), A181–82 (Rafferty Test.).

[21]  *Id.* at A181–82 (Rafferty Test.).

[22]  *Id.* at A199–212 (Gustave Test.).

[23]  *Id.* at A203 (Gustave Test.).

[24]  *Id.* at A210–11 (Gustave Test.).

Detective Phillips.[25]  In its rebuttal case, the State recalled Detective Phillips to the stand and presented two short video clips of Gustave's interview statement to support Detective Phillips's testimony that Gustave said he was scared after he was informed I.G. had been taken to the hospital and that Gustave offered no explanation for sleeping in I.G.'s bed with her.[26]

The next day, which was the final day of trial, the State moved to admit the video clips as State exhibits.[27]  Gustave objected because the evidence was already closed.  He also objected because the evidence was offered, in his view, solely as impeachment evidence, which does not typically go back with the jury during deliberations.[28]  The State responded that defense counsel was advised about the video clips before they were presented during trial and did not object, so there could be no prejudice, and that defense counsel had the opportunity to cross-examine on the video clip evidence.[29]  The State further argued that although one of the video clips was initially offered as impeachment evidence during Gustave's cross-examination, both video clips were later offered substantively through direct testimony of a State's witness, but that if the court wanted to mark the video clips as a court exhibit that would be "fine."[30]  After defense counsel

---

[25]  *Id.* at A209 (Gustave Test.).  This first video clip was forty seconds long.

[26]  *Id.* at A213 (Phillips Test.).  One of the two video clips was the same forty-second video clip that had previously been shown to the jury during Gustave's cross-examination and the other was a seventeen-second video clip.

[27]  *Id.* at A218.

[28]  *Id.*

[29]  *Id.*

[30]  *Id.*

responded again that the State "could have played it before Mr. Gustave's testimony and offered it substantively but they did not," the trial court agreed with defense counsel that the video clips would be marked as court exhibits.[31]

The jury began deliberations later the same day, on June 29, 2023. After about two hours, it came to the trial court's attention that the two video clips had been mismarked as State's exhibits and went back with the jurors, who then watched the video clips "a few times."[32] The trial court promptly notified the State and Gustave. The State asked for a curative instruction, and Gustave immediately requested a mistrial.[33] The trial court initially said that it was not going to declare a mistrial at that point but that counsel could research whether a mistrial would be warranted, and in the meantime, the court would give a curative instruction so that deliberations could continue.[34] After input from the State and Gustave, the court then gave the following curative instruction to the jury:

> There are certain types of exhibits that are marked as State's exhibits and certain types of exhibits that are marked as court exhibits. Both are evidence, but court exhibits are not provided to the jury during deliberations. The two video clips were marked as court exhibits. Therefore, I instruct you to use your recollection of the two video clips during trial only, as they were marked as court exhibits and were not supposed to go back to the jury deliberation room for further review.[35]

---

[31] *Id.* at A218–19, A246. The trial court said only, "I agree, it's a court exhibit." *Id.* at A219.

[32] *Id.* at A239–40.

[33] *Id.* at A240.

[34] *Id.* at A240–41.

[35] *Id.* at A242.

After the State and Gustave finished their research, while the jury was still deliberating, Gustave renewed his request for a mistrial, arguing that the video clips were extrinsic material that should not have gone to the jury and that there was a danger the jury would place undue emphasis on the video clips.[36] The State responded that the evidence was properly admitted during trial without objection and that as statements by the defendant, the video clips were admissible as substantive evidence.[37] The State further argued that there was no prejudice to the defendant for the jury to rehear the statements because they were made by the defendant, were properly admitted during trial, and could have been admitted as substantive evidence.[38] The trial court denied the motion for a mistrial, stating that "the standard is that there's no meaningful practical alternative so the mistrial is required" but that the court "did not hear that" in Gustave's argument.[39]

On June 29, 2023, about an hour and a half after hearing the curative instruction, the jury returned its verdict and found Gustave guilty of three counts of Rape First Degree and three counts of Unlawful Sexual Contact First Degree.[40]

---

[36] *Id.* at A242–43. Gustave cited this Court's decision in *Flonnery* and its progeny to support his argument. *See infra* Section IV.

[37] *Id.* at A243.

[38] *Id.*

[39] *Id.* The trial court's reasoning was stated succinctly: "[W]e're not at a point where I would declare a mistrial, if need be. I would like to say, though, in speaking to the standards, the standard is there's no meaningful practical alternative so the mistrial is required. In your argument I did not hear that, so I'm denying a mistrial[.]" *Id.*

[40] *Id.* at A7, A244. Instead of finding Gustave guilty of Rape Second Degree, the jury found him guilty of the lesser included offense of Unlawful Sexual Contact, for a total of three counts of Unlawful Sexual Contact First Degree.

On July 7, 2023, Gustave filed a timely motion for a new trial. The State filed its response on July 28, 2023, and Gustave did not file a reply. The trial court held oral argument on the motion for a new trial on December 19, 2023. Gustave again argued that the video clips were "extraneous" material and that it was inherently prejudicial for the clips to have been sent to the jury room.[41] The State renewed its argument that the video clips were not extraneous evidence and were admitted during trial as substantive evidence that was not objected to at the time it was offered.[42]

On January 5, 2024, the trial court issued a bench ruling denying Gustave's motion for a new trial.[43] The trial court found that the evidence had been properly admitted during trial without objection and that Gustave had failed to demonstrate actual or inherent prejudice:

> Due process requires a jury's verdict to be based solely on the evidence presented at trial, so a defendant is able to fully exercise his or her due process rights to confrontation, cross-examination.
>
> When extra record information is revealed to the jury which is information not introduced at trial, a new trial is warranted where the circumstances are so egregious as to be inherently prejudicial or where the defendant can show that the misconduct caused actual prejudice. Mr. Gustave has not met either standard.
>
> Egregious circumstances have been found to be inherently prejudicial when the jury members were made aware of information not introduced at trial that related to the facts of the case or the character of the defendant.

---

[41] Answering Br. Ex. A (Defendant's Motion for a New Trial).

[42] Answering Br. Ex. B (State's Response to Defendant's Motion for [a New Trial]).

[43] Opening Br. Ex. A; *see also* App. to Opening Br. at A8.

As here, where the juror misconduct did not involve communication of information outside the evidence presented at trial, there was no inherent prejudice.

The recordings were shown twice during trial without objection; therefore, the recordings were not extra record information, and there was no inherent prejudice because the jury did not hear outside information relating to the facts of the case.[44]

The trial court similarly found that Gustave had not established actual prejudice:

Here, however, Mr. Gustave made no showing that the recordings going back to the jury room for deliberation caused actual prejudice. The Court removed the recordings from the jury room and provided a curative instruction.

A trial judge's prompt curative instructions are presumed to cure error and adequately direct the jury to disregard improper statement because jurors are presumed to follow the trial judge's instructions.

In addition, the fact that the jury found Mr. Gustave guilty of a lesser-included charge suggests that they were able, impartial finders of fact.

It was proper for the jury to see the recordings. The error was mismarking recordings and letting the jury have the recordings to review during deliberation.

However, the trial lasted approximately two days. The recordings were viewed in court shortly before deliberations began. Therefore, whether the recordings were viewed during deliberations or not, the contents of the recordings would still have been fresh in the jury's mind. Thus, the court's error did not deprive Mr. Gustave of a fair trial.

Because the presence of the recordings during deliberations was not inherently prejudicial and because Mr. Gustave made no showing of actual prejudice, Mr. Gustave's motion is denied.[45]

---

[44] Opening Br. Ex. A at 6–7 (Trial Court's Bench Ruling).

[45] *Id.* at 7–8.

Although Gustave's motion for a new trial was denied because he failed to demonstrate actual or inherent prejudice, the trial court also explained that "a written or recorded confession, incriminating statement of a defendant properly admitted should generally go to the jury room during deliberations because of the centrality of the confession or incriminating admission to the State's case."[46] As the court explained, "Gustave testified and made statements that warranted the State utilizing the recordings to highlight the inconsistencies."[47] The trial court concluded on that point that although it had ruled that the video clips were to be marked as court exhibits, "the Court still held the discretion on how to label the recording."[48]

On August 16, 2024, the Superior Court sentenced Gustave to: (1) 30 years of incarceration at Level V, suspended after 25 years for decreasing levels of supervision, for the first count of Rape First Degree, (2) 25 years at Level V for each of the two additional counts of Rape First Degree, and (3) eight years at Level V, suspended after two years for two years at Level III, for each of the three counts of Unlawful Sexual Contact First Degree.[49] This appeal followed.

### C. Contentions on Appeal

Gustave raises two issues on appeal: (1) whether the Superior Court abused its discretion by denying his motion for a mistrial, and (2) whether the Superior Court abused

---

[46] *Id.* at 9.

[47] *Id.*

[48] *Id.* at 10.

[49] These sentences are to run consecutively. Opening Br. Ex. B (Sentencing Order); *see also* App. to Opening Br. at A8 (Superior Court Criminal Docket).

12

its discretion by denying his subsequent motion for a new trial. Although these two issues were framed as one issue with an alternative, the contentions arise from two different motions with different, although similar, legal standards. Thus, we analyze them separately below and affirm the Superior Court's rulings as to each motion.

## III. STANDARD OF REVIEW

This Court reviews a "trial judge's denial of [a defendant's] motions for a mistrial and for a new trial for abuse of discretion."[50] This is "because the trial judge is in the best position to assess the risk of any prejudice resulting from trial events."[51]

## IV. ANALYSIS

### A. The Trial Court Did Not Abuse Its Discretion by Denying Gustave's Motion for a Mistrial

This Court has repeatedly held that "[g]ranting a mistrial is an extraordinary remedy, warranted only when there is manifest necessity and no meaningful and practical alternatives" to remedy an error at trial.[52] "A trial judge is in the best position to determine whether a mistrial is warranted."[53] This Court has also consistently held that "even when prejudicial evidence is admitted, its prompt excision followed by a cautionary instruction

---

[50] *Flowers v. State*, 858 A.2d 328, 332 (Del. 2004) (citing *Taylor v. State*, 685 A.2d 349, 350 (Del. 1996) ("The decision whether to grant a motion for new trial is within the sound discretion of the trial court. This decision may be overturned only if there was an abuse of discretion.").

[51] *Williams v. State*, 296 A.3d 895, 902 (Del. 2023) (quoting *Copper v. State*, 85 A.3d 689, 692 (Del. 2014)).

[52] *Id.*; *Copper*, 85 A.3d at 693 (same); *Burns v. State*, 968 A.2d 1012, 1018 (Del. 2009) (same).

[53] *Flowers*, 858 A.2d at 334–35.

will usually preclude a finding of reversible error."[54] We have emphasized that "curative instructions are meaningful or practical alternatives to declaring a mistrial, and we presume that juries follow those instructions."[55] "Additionally, prejudice must be egregious when a curative instruction is deemed insufficient to cure prejudice to the defendant."[56]

Gustave first argues that the trial court ruled that the video clips of Gustave's interview were solely impeachment evidence that should not go back with the jury during deliberations.[57] Thus it follows, according to Gustave, that the curative instruction was insufficient to cure any prejudice to Gustave because the jury "was left unaware that the video clips were not substantive evidence and therefore not admissible to prove the truth of the matter asserted."[58]

Although the trial court agreed with Gustave that the exhibits would be marked as court exhibits, the court did suggest that it had discretion to admit them as State's exhibits. The trial court said only, "I agree, it's a court exhibit."[59]

---

[54] *Smith v. State*, 913 A.2d 1197, 1221 (Del. 2006) (quoting *Sawyer v. State*, 634 A.2d 377, 380 (Del. 1993) (citing *Pennell v. State*, 602 A.2d 48, 52 (Del. 1991))).

[55] *Sullivan v. State*, 26 A.3d 215, 2011 WL 3557783, at *3 (Del. Aug. 12, 2011) (TABLE) (citing *Justice v. State*, 947 A.2d 1097, 1102 (Del. 2008); *see also Pena v. State*, 856 A.2d 548, 551 (Del. 2004) ("Prompt jury instructions are presumed to cure error and adequately direct the jury to disregard improper statements, even when the error references extraneous offenses."); *Fuller v. State*, 860 A.2d 324, 328 (Del. 2004) ("The jury is presumed to have followed the trial judge's instruction and disregarded Officer Rosenblum's stricken testimony.").

[56] *Ashley v. State*, 798 A.2d 1019, 1022 (Del. 2002) (citing *Bowe v. State*, 514 A.2d 408, 410 (Del. 1986).

[57] Opening Br. at 9.

[58] *Id.* at 10.

[59] App. to Opening Br. at A219.

Leading up to this brief ruling, the State first explained that it did not offer the clips as exhibits during its case-in-chief because it did not have copies of them at that time and, instead, played them via a laptop. After its case-in-chief closed, it moved to re-open its case for the purpose of admitting the clips. The following reflects that exchange:

> [The State]: Good morning, Your Honor. Before we bring the jury in, Your Honor, before we begin, the State indicated to [defense counsel], and we briefly addressed this yesterday, the State would make a motion to reopen the State's case for the purposes of putting into evidence the two clips presented to Mr. Gustave. At the time we did not have copies of them, they were played through the State's laptop. The State would ask that we be able to mark these as State's exhibits. [Defense counsel] and I discussed yesterday how they should be put into evidence, whether a State's exhibit or a court exhibit. The State would submit they should be a State's exhibit, they were not introduced under 3507 and should be properly admitted as State's exhibits, and so that was the State's motion, Your Honor, to have them marked and moved into evidence and to move the entirety of the State's exhibits into evidence at this time, Your Honor.
>
> THE COURT: [Defense counsel].
>
> [Defense Counsel]: Yes, Your Honor, the defense opposes. Evidence is closed at this point and to reopen the case to allow the State to have a do-over and move in evidence they should have moved in yesterday would be prejudicial to my client.
>
> Additionally, although [the State] did not use those clips to impeach Mr. Gustave on the stand, the purpose of introducing them through Detective Phillips was to impeach him and impeachment evidence does not go back to the jury, it is not admitted substantively, and so it was the defense's position yesterday and remains defense's position that these are more appropriate as a court exhibit, rather than substance evidence, and allowing the State to have a do-over for something they should have done yesterday would be prejudicial to my client.[60]

---

[60] *Id.* at A218.

The court then asked defense counsel to explain how the defense was prejudiced, prompting this next exchange:

> [Defense Counsel]: Your Honor, I would not have the ability to offer evidence to potentially contradict those videos and I couldn't oppose their admission into evidence at that time. Obviously had I had the opportunity to oppose their admission yesterday when the State introduced that evidence, I would have done so, for the same reasons I'm advising today, is that it was offered for impeachment. Impeachment evidence does not go back to the jury.
>
> [The State]: Your Honor, I did advise [defense counsel] yesterday before I played those clips, she did not indicate any objection at that time, and so the State would argue there is no prejudice, it's been presented to the jury, she had the opportunity to cross-examine on that evidence. The State is not admitting any evidence that hasn't already been presented that she had an opportunity to cross-examine on, it's simply what was put before the jury yesterday, that she was aware it was going to be put before the jury and she did not object yesterday and had the opportunity to cross-examine on yesterday or present anything that she wished to contradict the evidence the State presented.[61]

The court then asked the State for its response to the defense's position that the clips were merely impeachment evidence which should not go back with the jury. The State responded:

> [The State]: Your Honor, I agree with regards to the clips that were used during Mr. Gustave's testimony, but it was the State's evidence that was presented through a State's witness. If the Court prefers it be marked as a court exhibit, that's fine, but for the accuracy of the record I do believe it needs to be marked as an exhibit, Your Honor.[62]

The court then asked defense counsel to respond and then ruled as follows:

> [Defense Counsel]: Your Honor, I maintain the position that the State did not introduce it. If the purpose of offering that evidence was to impeach Mr.

---

[61] *Id.*

[62] *Id.*

16

Gustave through another witness, impeachment evidence does not go back to the jury. The State could have played it before Mr. Gustave's testimony and offered it substantively but they did not choose to do so. The State did not choose to admit this evidence yesterday substantively and has decided today that they wish to do so, and we would maintain that it's impeachment evidence and should not go back to the jury, it's more appropriate as a court exhibit.

THE COURT: I agree, it's a court exhibit.[63]

Gustave argues in his reply brief on appeal that the "video clips were marked as court exhibits because they were not admitted as substantive evidence."[64] But there is merit in the State's view that it used the video clips as substantive evidence as well. Although the State first offered one of the video clips during cross-examination of Gustave to impeach the truthfulness of his testimony, the State later offered both video clips in its rebuttal case during direct examination of a State's witness, Detective Phillips, to support his testimony about his interview with Gustave.[65] In the seventeen-second videoclip, Gustave stated that he was afraid because I.G. had been taken to the hospital after she accused him of rape. In the second forty-second video clip, Gustave stated that he slept with I.G. on five occasions and could not provide a reason for sleeping with her.

The brief re-direct examination of Detective Phillips by the State lends support to the State's view that the clips were used substantively as well as to impeach Gustave. First, the State asked questions to lay a foundation for playing the two video clips:

Q. Good morning, Detective Phillips.

---

[63] *Id.* at A218–19.

[64] Reply Br. at 2.

[65] *Id.* at A209, A213.

A. Good morning.

Q. We've heard some testimony from Mr. Gustave about him coming to New Castle County Police Department on January 14th?

A. Correct.

Q. And did you have an opportunity to speak with him on that date?

A. I did.

Q. And was that interview recorded?

A. It was.

Q. Have you had an opportunity to review the recording of that video?

A. Yes.

Q. Does it accurately depict the conversation that took place between the two of you?

A. Yes.

Q. And during that interview did Mr. Gustave make mention of the fact that he knew that [I.G.]'s family had taken her to the hospital to get some tests and to get checked out with regards to these allegations?

A. He did.[66]

The State then played the video clips and questioned Detective Phillips further:

Q. I'm going to play for you a short clip. [Video played.] Was that the question you were referring to?

A. Yes.

Q. And during that interview did you also ask Mr. Gustave about the sleeping arrangements that he had when he was living with [I.G.] and Regina?

---

[66] *Id.* at A213 (Phillips Test.).

A. I did.

Q. Did he mention make mention [sic] of the fact that he slept in the same bed with [I.G.] approximately five times?

A. He did.

Q. Did you inquire as to why it was that he slept in bed with her?

A. Yes.

Q. And we watched the prior clip before. At any point during the interview does he offer you an explanation or reason why he had been sleeping in bed with her?

A. No.

Q. Does he mention what he heard today with regards to [fall]ing asleep playing video games?

A. No.

Q. I'm going to play for you another clip. [Video played.] At no other point during the interview did he explain to you that he was playing video games and they fell asleep while doing so?

A. No.[67]

Although the trial court initially agreed to mark the video clips as court exhibits, after the State said that would be "fine," it later explained that the clips could have been admissible as substantive evidence. The trial court observed in its later bench ruling that a properly admitted recording of a defendant's incriminating statement "should generally go to the jury room during deliberations," and "[a]lthough the Court ruled the recordings to

---

[67] *Id.* (Phillips Test.).

19

be marked as court exhibits, the Court still held the discretion on how to label the recording."[68]

This clerical mistake in sending into the jury room the clips which had been marked as court exhibits did not prejudice Gustave. Gustave argues that this mistake not only prejudiced him but was so prejudicial that it deprived him of his constitutional right to a fair trial.[69] We disagree. The jury properly viewed the clips during trial. The error was in the court's sending them back to the deliberation room with the jury. However, this was not evidence that the jury should never have seen or heard. This was unobjected-to evidence that the jury had already seen twice, shortly before deliberations began. The video clips were the last piece of evidence the jury saw before deliberations began. We reject Gustave's claim that he was prejudiced in any significant way by the jury rewatching the same short video clips it had already seen a short time earlier.

To the extent there was any prejudice, the curative instruction that the trial court gave to the jury immediately after discovering the error and removing the video clips was sufficient to remedy it. We presume that the jury followed the trial court's instruction to rely only on their recollection from trial of the video clips they had already seen.

---

[68] Opening Br. Ex. A at 9–10; *see also Flonnory v. State*, 893 A.2d 507, 528–29 (Del. 2006) ("[W]e think that written or recorded confessions or incriminating statements of a defendant properly admitted (whether through § 3507 or otherwise) should generally go into the jury room during deliberations because of the centrality of the confessions or incriminating admissions to the State's case.").

[69] Opening Br. at 10; *see also* U.S. Const. Amend. VI and XIV; *Flonnory v. State*, 778 A.2d 1044, 1051 (Del. 2001) ("The right to a fair trial before an impartial jury of one's peers is fundamental to the American criminal justice system.").

These circumstances do not rise to the level of "egregious prejudice" that is required to overcome the presumption that a curative instruction precludes a finding of prejudice. The cases that Gustave cites to illustrate such egregious prejudice are easily distinguished. For example, in *Ashley*, this Court held that a curative jury instruction could not cure prejudice that arose from a spectator's outburst during trial about the defendant stabbing him fourteen times.[70] That was extraneous information outside of the trial record that should never have been before the jury. By contrast, in this case, the jury rewatched short video clips of the defendant's own statements that it had already properly viewed.

Although Gustave attempts to characterize this as a close case with "no physical evidence to definitively link Gustave to the crimes charged, therefore boiling the case down to I.G.'s word against Gustave's," this characterization ignores the substantial evidence that was presented against Gustave.[71] This evidence included I.G.'s testimony about Gustave's sexual assaults, the particular words he used with her as codes for sexual activity, the gum that was used during the sexual assaults, and text messages that included those code words and discussion of the gum; the text message exchange between Gustave and I.G. that corroborated her account of events; medical test results that showed Gustave and I.G. both tested positive for chlamydia on the same day; and evidence that he had absconded from the police.

---

[70] *Ashley*, 798 A.2d at 1021–23.

[71] Opening Br. at 10.

21

Considering this evidence, the unlikelihood of the video clips causing significant prejudice, and the fact that a curative instruction was given immediately after removing the video clips from the room, the trial court did not abuse its discretion by denying Gustave's motion for a mistrial.

### B. The Trial Court Did Not Abuse Its Discretion by Denying Gustave's Motion for a New Trial

As the Superior Court recognized, the standard for granting a motion for a new trial is different than the standard for granting a motion for a mistrial. Delaware Superior Court Criminal Procedure Rule 33 states that, "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."[72] "[A] defendant is entitled to a new trial *only* if the error complained of resulted in actual prejudice or so infringed upon [a] defendant's fundamental right to a fair trial as to raise a presumption of prejudice."[73] "It is very difficult for any defendant to prove *actual prejudice* within a jury panel."[74] However, "[i]f a defendant can prove a reasonable probability of juror taint, due to egregious circumstances, that are inherently prejudicial, it will give rise to a presumption of prejudice and the defendant will not have to prove actual prejudice."[75] Thus, a defendant must demonstrate either actual prejudice or egregious circumstances that are inherently prejudicial in order to succeed on a motion for a new trial.

---

[72] Del. Super. Ct. Crim. R. 33.

[73] *Hughes v. State*, 490 A.2d 1034, 1043 (Del. 1985) (emphasis added).

[74] *Flonnory*, 778 A.2d at 1053 (citing *Massey v. State*, 541 A.2d 1254, 1257–58. (Del. 1988)) (emphasis in original).

[75] *Id.* at 1054.

Gustave argues, in the alternative, that the trial court abused its discretion by denying his motion for a new trial because the trial court reasoned in its bench ruling that "Gustave failed to establish actual prejudice."[76] Gustave's argument fails for two reasons. First, Gustave mischaracterizes the trial court's ruling. The trial court clearly ruled on both forms of prejudice, holding that "[b]ecause the presence of the recordings during deliberations was not inherently prejudicial and because Mr. Gustave made no showing of actual prejudice, Mr. Gustave's motion is denied."[77] Second, the trial court was correct in its holding that Gustave failed to establish actual prejudice.

Gustave attempts to ground his inherent prejudice argument in this Court's holding in *Flonnory* and its progeny, especially *Lewis*.[78] His reliance on these cases is misplaced. In *Flonnory*, this Court held that:

> As a general matter, recorded or written out-of-court § 3507 statements that are played or read during trial should not be admitted as separate trial exhibits that the jury can take into the jury room during deliberations when all other testimony—including direct and cross-examination testimony of a § 3507 witness, out-of-court § 3507 statements presented by a witness other than the § 3507 declarant, and testimony presented by non- § 3507 witnesses—are generally not admitted as separate trial exhibits in transcript form after the witness testifies in court. The reason derives from the concern we discussed in *Taylor*, that allowing the jury to have transcripts of trial testimony during their deliberations might result in the jury giving undue emphasis and credence to that portion of the testimony. That concern is equally applicable to written or recorded § 3507 statements that are admitted into evidence as separate exhibits after they have been heard in open court. Thus, we hold that the "default" rule is that written or tape or video-recorded § 3507 statements should *not* be admitted into evidence as separate trial exhibits that go with

---

[76] Opening Br. at 11.

[77] Opening Br. Ex. A at 8.

[78] Opening Br. at 11–13 (citing *Flonnory*, 893 A.2d at 526; *Lewis v. State*, 21 A.3d 8, 13 (Del. 2011)).

the jury into the jury room during deliberations although the statements may be played or read to the jury in the first instance during the course of trial[.][79]

However, this Court was careful to distinguish between incriminating statements of criminal defendants versus § 3507 statements of other witnesses:

> We note that the § 3507 "default" rule applies narrowly only to written or recorded § 3507 statements of witnesses *other than* the criminal defendant. The default rule does *not* apply to written or recorded confessions or incriminating statements a defendant makes directly (by his own hand or mouth) when those statements are admissible as trial exhibits without the use of § 3507 or even when the State uses § 3507 to admit a defendant's statement.[80]

This Court further noted that "it will almost always be within a trial judge's discretion to allow the defendant's written or recorded confession or incriminating statement to be admitted as a trial exhibit that goes into the jury room during deliberations."[81]

In *Lewis*, four § 3507 witness statements were played for the jury during trial, and the State and defense counsel agreed they should be entered into evidence as court exhibits only and not given to the jury.[82] The trial court declined to accept that agreement and, after reviewing this Court's decision in *Flonnory*, the trial court decided *sua sponte* to permit all four videotaped §3507 witness statements to be sent to the jury room for them to "work through" the tapes during deliberations.[83] This Court held that the trial court's decision to allow the jury to rewatch and "work through" the witness statements during deliberations

---

[79] *Flonnory*, 893 A.2d at 526.

[80] *Id.* at 527–28 (emphasis in original).

[81] *Id.* at 529.

[82] *Lewis*, 21 A.3d at 11–12.

[83] *Id.* at 12.

24

allowed "exactly the type of over emphasizing this Court was concerned about in *Flonnory*."[84]

Gustave's reliance on *Flonnory* and *Lewis* is misplaced because the holdings of these cases address § 3507 statements of other witnesses, not the criminal defendant. As to criminal defendants, *Flonnory* explicitly states that its rule does *not* apply to recordings of incriminating statements made by the criminal defendant. There is a distinction between impeachment of a nonparty witness and impeachment of an accused with an incriminating admission. When a defendant is impeached with a prior inconsistent statement amounting to an admission, that statement is admissible against him as proof of the truth of what he said.[85] Gustave chose to testify and was cross-examined as to the matters discussed on the videos. Detective Phillips was properly permitted to testify as to Gustave's prior statement on those subjects.[86] We agree with the Superior Court's conclusion that it retained the discretion on how to label the video clips.

Gustave offers no other argument for how the trial court's clerical mistake created egregious circumstances leading to inherent prejudice. The trial court in this case applied the correct standards to evaluate Gustave's motions for a mistrial and for a new trial and

---

[84] *Id.* at 14.

[85] *See Flonnory*, 893 A.2d at 516 (observing that under D.R.E. 801(2)(A), an admission by a party opponent is not hearsay); *U.S. v. Porter*, 544 F.2d 936, 938 (8th Cir. 1976) (holding that the defendant's extrajudicial prior inconsistent statements were properly admitted as rebuttal evidence and were "admissible as admissions of a party-opponent for any inference the jury could draw").

[86] *See, e.g., Gallaway v. State*, 65 A.3d 564, 570–71 (Del. 2013) (holding that a YouTube video was properly admitted to rebut defendant's testimony about his state of mind even though the video would not have been admissible in the State's case-in-chief).

found that Gustave failed to demonstrate actual or inherent prejudice resulting from the clerical mistake. Accordingly, the trial court did not abuse its discretion in denying Gustave's motion for a mistrial and motion for a new trial.

*V. CONCLUSION*

For the reasons discussed above, the Superior Court's judgment is AFFIRMED.